May it please the Court, I'm John Stevens and represent the appellants, Charlene Cox. They're the plaintiffs in an Oregon Securities Law class action. As a part of the case, we entered into a settlement with the CPAs who provided services for the issuer of the particular securities. We obtained a stipulated judgment from them, and then we proceeded to garnish the defendant here, Liberty Mutual Insurance. This appeal presents two related issues. First, whether Oregon courts permit an insurance company to avoid providing coverage for a risk that it had promised to cover by pointing to its insured's failure when reporting a potential claim to provide certain sub-detail information called for by the policy, even though the company was given more than enough information to undertake its duty to investigate. If that's the question presented, you win. So that's not really the question presented. The question presented is whether you gave them sufficient information under the policy, isn't it? As far as I'm concerned, yes, that is correct. Okay, so tell me why. Here's what I understand was provided in the conversation between the representative of the accounting firm and the insurance company. They were told there was a bankruptcy going on of this firm whose name I can't pronounce. I assume it's Berjak? It is Berjak, yes, Your Honor. Thank you. I'm doing well so far. Yes. And that they had done accounting work for Berjak. Yes. And that there were angry investors. Yes? That is correct. Any additional information? Yes. They provided detailed information about what it was. Don't characterize the information. Just tell me what was said. Okay. They provided information about the business that Berjak was in, that it issued securities to investors, that it obtained bank loans, that the accounting firm had done accounting work for the firm, that that accounting work consisted of reviewed financial statements, that the reviewed financial statements were used to support the line of credit that the company had obtained from the bank, and that, in addition, they also prepared tax returns for the company. And there's two partnerships. It provided information about the partnerships, that they had assets of $40 million, that they were run by two brothers. So what about all this information would give the insurer information that there was a potential claim against your clients? Did they say, we lied in doing the returns, people say they were inaccurate, some accusation has been made against us? I know they provided a number of facts, but what among those facts gave rise to a potential claim? Sure. One, I think it's important to look at what the definition of a potential claim is under the policy, which is events or circumstances. It's not defined in terms of we did something wrong. So it's important that some policies do say they're wrongful acts policies. This isn't one of them. Right. This is in events or circumstances. So my point being that what it is that they told them about were the events or circumstances, and that's what constitutes a potential claim. But your client had done accounting work for any number of people during the policy period, right? Well, yes. So what, in addition to the fact that they'd done accounting work for Bergec, that Bergec had used as accounting work, is often used to get loans and other things, was enough to tip this from just the ordinary work they did to a potential claim? And it's the next piece of information, and that is that the State of Oregon had commenced a proceeding against Bergec, that it had entered an order that they cease and desist in business, it had fined them $900,000, that it had put them into bankruptcy, and that it had ordered the company to return the money to investors that it had collected. Isn't that – wasn't that premised on a finding by the State that they were not authorized to issue securities? It was that they're unregistered securities, yes. Right. But that finding doesn't lead me to a belief that your clients did something wrong. Well, I will add that there's more – the report that was given on September 5, 2012, said unregistered securities. The actual order also says that they sold securities by means of untrue statements, that kind of thing. Let me see if I understand your argument. Are you arguing or suggesting that because of the notice prejudice rule that it should be applied here, that's a more relaxed reading, therefore there's been compliance, or are you just arguing you substantially complied based on some cases that are out there? Can you really crystallize your argument for me? Well, first of all, first of all, we're not relying per se on the notice prejudice rule because it usually applies to occurrence policies, and this is a claims-made policy. Because it looks like you might be relying on it. But we're relying on exactly the same principles at work. These principles are applied in the context of notice prejudice – excuse me, in the context of occurrence policies by the State of Oregon. They're applied with respect to proofs of loss by the State of Oregon, and they're also applied with respect to a statute that has to do with proofs of loss. It's the same exact principle that strict compliance is required. Our contention is that strict compliance is required with respect to reporting a potential claim during the claim period. That's the heart of the claims-made policy, and that's what this Court decided in the Oregon schools case. But that with respect to the additional information pieces, the additional sub-detail type information, that a more relaxed standard applies. My difficulty is – and that's why I asked the question at the beginning. If you called up the insurer and said, we think there's going to be a claim against us, and we think it's going to be by investors because we – relating to this and that, then this would all be additional information. But it's only the additional information that you've provided, isn't it? All you did was say, here are some facts that conceivably, if you look beneath them, not just what we told you, might lead to a claim later. And you're saying that's enough to comply with what part of the policy? Well, with the part of the policy that says you need to report a potential claim. And I will add that the Court's question is more focused on the idea of reporting a claim. Here, because no claim had been asserted, so it's a more relaxed – There's a difference between an actual claim and a potential claim. I'm not sure I buy your division between the claim and the additional facts, but I'm trying to figure out why you think all these things here fall in the additional facts category. No, I think that the information that they provided was a description of the events or circumstances that an insured – any insured would reasonably believe could give rise to a claim against the company. And that's the definition of a claim. Let me try this differently, just so – What if – this is the second policyholder, which begins with a strange – was it X something? XL. XL. What if you'd actually not had difficulties with the application with XL? And in November, December, January, when these suits were actually being filed in the bankruptcy court, you went in and said, we have a claim made against us. Any doubt that they would cover that? Well, they wouldn't have covered it. Well, they would have, wouldn't it? Wouldn't it have been a claim made during their policy period? Oh, you mean if we had – Yeah, they were concerned about the nature of your application and therefore reserved the rights. But let's assume that problem weren't there. If you went to the next insurer when the claim was actually made and said, we have a claim that's being made, wouldn't it be covered under their policy? I think the answer is no. And the reason is, is that we had reported it to the potential claim to Liberty Chemical on September 5th, and that would have excluded coverage under the XL policy because it had already been reported to another insurer. And that's actually the – What if you hadn't reported it? Pardon me? What if you hadn't reported it to Liberty? Well, then that would have raised the issue of whether we had knowledge of a potential claim before that and should have reported it. But that would also be the issue is where, you know, maybe, yes, we could have skated by, you know – and I say we. Jones and Roth, I don't represent them. I represent – right. But in effect, it's their rights. Right. Maybe Jones and Roth could have skated by if they had failed to disclose what it was they'd known at the earlier date. But, you know, but that's starting to hypothesize a set of facts that are contrary to what it is that they did know on September 5th. When you did the XL policy – J.R. did it, not you. Right. They didn't report this as a past claim. You know what the policy said. Please report any claims you've made in the past. And they didn't report this as one. What relevance does that have here? I think that it has none. It's not an instance where anything was – there was any – one is if you look literally at the questions that they were asked, those were correct answers by Jones and Roth with respect to the XL policy. But more specifically, it is a situation where they didn't – in order for there to be some kind of an estoppel, any sort of untrue statement or misleading statement would have had to have been made to Liberty Cameco, and that isn't the case here. It was never communicated to Liberty Cameco. They never relied upon it. And for that matter, XL never relied upon anything that they were told as well. Sorry. Go ahead. I just wanted to finish one thought on Judge Hurwitz's question. It's not a thought, but a point that I think is critically important is that it's clear from Mr. Homan's notes – he's the person at Cameco who took the call – that he understood that a potential claim was being made. He understood that it was required that the company was going to be required to pay back money to investors, and he said, please stay in touch with us because if investors don't get their money back, somebody is going to be mad. And, of course, the only reason why he wants them to stay in touch with Cameco Liberty is because he understands that if investors don't get their money back, somebody is likely going to assert a claim against the accounting firm. So that's how his notes end in the call, and I think that that's a critical piece. The other thing that I think is an important piece, maybe less critical, is that when you look at the computer screen, he entered it as a claim. So Mr. Homan understood that a claim was being made as well. I thought he entered it as – let me go back. You seem to concede that there is no Oregon case applying this notice prejudice rule to claims-made policies. What binding authority, then, is – what I'm curious about, what binding authority do we have to apply such rule to the policy at issue, in this case, under Oregon law? What you have is what I would say binding – I mean, in terms of binding stare decisis, you must follow. I agree that you don't have that. But what you do have is a strong indication about how the Oregon courts would approach this problem based on the Sutton case that we've cited to you, which involved – that's the proofs-of-loss situation, which says that if you – the proofs-of-loss that if you give an insurer sufficient information whereby they can undertake their duty to conduct a reasonable investigation, then you have satisfied those – that situation. So you have – And you think that applies to a claims-made policy? Yes, I do, with respect to the additional information. Not the time – Not with respect to the additional information. But the content of the notice. You just said that Mr. Homan coded this as a claim. My review of the record – I may have it wrong – says he put it in as an advice call. Correct. There's two columns, Your Honor. Right. Advice call and pre-claim. And he put it in advice call, correct? If you look at the page on the right side – I'm looking at it right now. If you look over on the left where the circle is, it's entered as a claim. So it's entered as both designations. But he has a pre-claim designation. He didn't make that. He did not make the pre-claim thing. Okay. Right. That's why I said it's less correct. Before your time is up, I just wanted to ask you about estoppel. What's your strongest argument that the notice provision in the Liberty policy was not a condition of coverage? I guess if it wasn't a condition of coverage, what was it? The timing, Your Honor, is definitely a condition of coverage. It's the additional information pieces that are not conditions of coverage. How were they estopped from asserting those? That's the question, Judge. I understand how they were estopped from requiring them in writing because they said, just give us a call when you've got a claim. But why are they estopped from asserting them? They're estopped because of their conduct. And, I mean, they don't just say, give us a call. They go on and on in their policy. What makes us stand out is that we are there to protect you. So if you call us up, whatever you tell us, we'll cover you. Is that what you're saying? No, but if there's some little piece of information that we need in order to help you perfect your claim, we will ask you about it, and that's what that means. Your time is up. Thank you. May it please the Court, Peter Hawks on behalf of Liberty Insurance Underwriters. I'd like to begin by noting that there are multiple paths that this Court can take to affirm the district court's judgment. The Court can agree with the district court's analysis, essentially rejecting the version of the notice prejudice rule that Well, let's assume we don't use notice prejudice, for example. Okay. I'm concerned with where I thought your friend was starting without his slightly slanted description of the facts. What more would be required in this call to Mr. Homan to make it a potential claim? Well, I think significantly more. I mean, what What if he had said, what if the representative from JR had said, here are all these facts, and I'm pretty sure we're going to get sued? Would that have been sufficient? Well, I don't think it would have been sufficient under the terms of the policy. So then I think we're talking about We're talking about the policy. Let's assume I call up my insurer and say, look, I've been doing financial statements for this firm. They just got shut down by the Oregon Attorney General in order to return money to investors. And my financial statements were used to get bank loans and for lines of credit, and I'm afraid we're going to get sued. I don't know by who. Right. But, you know, when these things happen, lawsuits occur. So I want to put you on notice. Would that have been sufficient? In fact, I mean, I'm looking at this call that was made, the notes from the call, because it seems like that's what we're looking at. The potential claimants are referred to. Damages is referred to. Sort of an explanation of what's going on, similar to what Judge Hurwitz just asked, seems present. Nothing missing from what I can tell is name, address, and name and address of the claimant. Why isn't that sufficient? Well, I think there's more missing than that, because of those three categories of information that they're supposed to require, the third one is an explanation for why there's a potential claim and why it may become a claim. And we have a lot of circumstances here that, okay, these are kind of generally circumstances where sometimes people get sued, but they need to explain how what they did is going to lead to a lawsuit by someone. Well, what if they maintain? They don't have to admit guilt. No. They go up and say, we did financial statements for this organization that appears now to be shady or had some problems, and there's a bunch of investors out there who are really unhappy. Right. And they didn't then say, and even though we didn't do anything wrong, we're afraid we may be sued in some respect, but surely that's the implication from the information they gave us. Well, I'm not sure it is the implication because they never explained how their work connected to these investors. For example, they never say our financial statements were then reviewed by the investors and relied upon when they were investing in this company. And, in fact, they knew at the time that the investors had never seen the financial statements. Well, what if the investors' claim against them would be frivolous? That really doesn't matter. In other words, they're calling up and saying, we've been around the block a bunch of times. Whenever a securities company goes down, you can't sue them, so the investors go out and look for any deep pocket they can find, and we're afraid we're going to be the deep pocket. Would that be enough to make a potential claim? Well, still, I think they have to have some sort of reason to believe that that is likely to happen. State what they needed to say. Well, I think they needed to provide the three categories of information. Tell me what that is because I'm seeing this, so I want to know what you think it needed to say. Okay, so they should have, to the extent that they had the information available to them, they should have provided the names of the investors that they thought could potentially sue them. They should have provided – No, no. So assume they had said, we have no idea who these investors are, but they're making noise in the bankruptcy. Right. If the information isn't available to them, they're not required to provide it. That's what the policy says. It says if available. So to the extent that this information is available to them, and we know to an extent it was because they were in this local business organization with several of those people, presumably they knew who those people were or could easily find out. Second, they need to say who was involved. Who were the individuals at the accounting firm who did the work that you think may be subject to challenge here? Those are the people that are going to need to be interviewed. Those are the people who you're going to have to look into the particular work that they did. That information isn't there. They give a ballpark number about the size of the company, but they don't say, here's how much is outstanding to investors. None of that information is provided. So we really have no sense – What if they don't know any of that information on the day they call in? It's early days, and your guy doesn't say, look, here's the other information I need. Thanks for letting me know. Get back to me quickly with the other information. You just say, well, that's not enough. As you said, it's readily available. Why doesn't that give you all the information you need to begin your investigation? Well, under the policy, it's the insurer's obligation to provide that information to the extent it's available. If it's readily available to them, then that's something that they need to provide. How do we know that it's readily available at that time? How do we know that they could make an estimate of liability on November 5th, the day the call is made? September 5th. September 5th. I'm sorry. I'm on the wrong month. How do we know that they can make an estimate of liability on that day or identify the investors or even identify the nature of what they might be claiming against this firm? Well, as the district court pointed out, it's the plaintiff's burden here to prove coverage. And so if they are going to contend that there are certain categories of information that wasn't available, it's their burden to prove that, and they didn't carry that burden. They didn't show that this information was not available to the accounting firm. Is the information that is reflected here in this call sufficient under the more relaxed standard? Again, I don't know. It's not. Why not? It's not because there's not enough information there for the insurance companies. I understand under the stricter and more narrowly, but why not under the more relaxed standard? Well, under the more relaxed standard, even so, what they've essentially done is dumped a bunch of facts in the lap of the insurance company saying, I got something bad going on with a client. I don't know what's going to happen. You figure out what are the potential claims that may be asserted against me in this scenario. It's like a law school hypothetical. Actually, it's worse than a law school hypothetical because I think there are fewer facts provided, fewer underlying facts provided for you to even be able to begin to analyze what the potential claims would be. But it's a potential claim, and that's the problem. Nobody's made a claim against them, so they can't identify what the investors will contend. They can't identify whether it will be good or bad or indifferent. But they've told you there's a bunch of angry hornets out there who are liable to sting me. Why isn't that enough to put you on notice of a potential claim? Well, there's certainly information out there that you've got angry investors, but again, there's got to be some way of tying that to the conduct of the accounting firm. Well, they said we did financial statements for these folks which were used to get bank loans and lines of credit. I'm not sure why that tells me the investors would be after them, but maybe the investors had no good reason to go after them. Maybe it's a terrible case, but they said because we did that, we're worried the investors might sue us. Do they have to make up good claims for them too? Well, if every potential frivolous claim— You'd have to defend a frivolous claim, wouldn't you? Well, sure, you'd have to defend a frivolous claim, but I don't think that you can reasonably— the standard for a potential claim is that you have facts or circumstances that might reasonably lead an insured to believe that a claim is going to be asserted against them. I don't think it's reasonable to assume that a frivolous claim is going to be asserted against you. Well, but they—we can't use post hoc judgment, but it does strike me that it is perfectly reasonable to think that a bankruptcy trustee looking to suck up all the money possible to pay off claimants will sue everybody involved in a securities transaction. Isn't that a perfectly reasonable assumption? Well, first of all, we've got to go back to September 5th. What did the bank—what did the insured know at the time? At that point in time, this had not yet been converted into a liquidation bankruptcy, so you still had the client involved in running the company. They were going to try and work it out. Very soon after that, then it became a liquidation. But at that point in time, I don't think you could assume that you're going to get sued because— simply because the company went into bankruptcy. And again, at this point in time, they—the testimony is clear that they didn't believe that they'd done anything wrong. I'm not saying that they have to actually think that they made a mistake, but they have to have a reason for thinking that someone's going to allege that they made a mistake. Well, you seem to be making two different arguments, and I want to try to focus on which one you're making. One is there simply wasn't a potential claim to report at the time. No matter how much information they gave you, it wouldn't have risen to the level of a potential claim. Correct. The second one is maybe there was a potential claim, but they didn't give you enough information. Which argument are you making? I would say both. Yeah, but it can't be both. It can't be both. Well, okay. I mean, I guess it depends on how—at what point does something go from being a generally bad situation where sometimes people get sued to reasonably anticipating that a claim is going to be filed against you. I don't know exactly where that line is. But your brief seems to say they had more information that they didn't give us, and that suggests to me there could have been a potential claim had they provided you with more information.  Well, there's certainly—whether or not there was a potential claim, there are certain categories of information that were required under the policy that they had and could have provided. That's the question Judge McGee asked you before. Right. What more, when they called up facts, not categories, what more facts would you have needed to transform this into a potential claim? Some sort of facts connecting the work that the accounting firm did to the investors who might potentially assert a claim against it. The problem in this case is that, as I read the record—I haven't got no idea why the claimants have a good claim against J.R., but that's a separate issue. As I read this record, the reason they asserted a claim against J.R. was because it did financial statements that they contend were materially misleading. Well, what happened was a rather creative argument by— You gave up the ability to defend the case on demerits. Right. Well, what happened was a very creative argument where the plaintiffs ended up arguing that, even though we never saw the financial statements at all, they went to the bank. They got bank loans, which enabled them to continue making—getting new investors. Look, if you had agreed to defend or indemnify, I think you probably would have won that case. But for whatever reasons you decided not to defend, now you're stuck with a judgment. So the truth is what the claim against these folks was made on was the fact that they did financial statements, wasn't it? Ultimately, yes. And they disclosed to you that they did financial statements. That's true. So what more could they have told you? Well, what they could have told us was what is the connection between the financial statements and the investors. I still can't figure out the connection. I mean, and maybe they couldn't at the time either. Right. But, I mean, at some point you've got to be able—it's very easy with hindsight to say, okay, they ended up getting sued for this, so they must have been able to anticipate it at this earlier point in time. But based on the information that they had in that point in time, I don't think that they had enough to really understand why the investors might potentially sue them at some future point in time. Yeah, and one of the difficulties in this case on both sides for me is you've got a lawsuit that's essentially collusive. You've got a lawsuit by the trustee and the investors against J.R. who says, we don't care. One insurer will pay part of it, and another insurer will pay the other part of it, so we'll have a judgment. And so figuring out what somebody should have known about a claim that, in my mind, isn't clearly existed at all is rather difficult. And while we're talking about this issue of whether there was—you know, if we're applying this version of Nevis prejudice rule, whether there was prejudice, I want to go back to a fundamental issue, which is that that was an alternative ground, an alternative holding that the district court relied on in making its ruling. It said, I don't find that the notice prejudice rule applies here. But even if I did, even if I accepted the version of it that plaintiffs are urging, I would come out the same way. That's at ER 23 to 25 where he has an entire analysis. Let me ask you about the notice prejudice rule because it seems like Byrne's help that the notice prejudice rule should not be applied to claims made policies. However, it made this holding interpreting California law. I understand that, and so I'm just trying to figure out if this decision is relevant in binding in this case. I wouldn't say it's—I'd say it's highly relevant because I think there's a lot of similarities to the way Oregon and California approach insurance policies. It's not binding in that it's obviously applying California, not Oregon law. We do have the Oregon schools case, which obviously is also not binding because it wasn't published, but I think the reasoning of it is highly persuasive that Oregon would come out the same way that California did. Thank you. Your time is up. I'll give you one minute. Thank you. A few points that I think are also worth pointing out is that as a part of his findings, Judge Mosman did find that on September 5, 2012, that events or circumstances constituting a potential claim did exist. And he particularly pointed to the fact that there had been a failure of the business, that it had declared bankruptcy, that people had bet money based upon financial statements that Jones and Roth had issued, and as a consequence of that, a potential claim existed. If you look at what it is that Judge Mosman points to as evidence or facts constituting the potential claim, they are exactly what was reported by Jones and Roth in the September 5, 2012, communication and then beyond that. And then also with respect to the description of damages, I think that investors getting their money back is a good description of the damages. And on that basis, that there was a reporting of a potential claim. Thank you. Thank you, Mr. Stevens, Mr. Hawks, for your presentations here today. The matter of Charlene Sue Cox v. Liberty Insurance Underwriters Incorporated is now submitted.
judges: Murguia, Hurwitz, Zipps